IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMY CARNRICK,<br><br>             Plaintiff,<br><br>  vs.<br><br>RIEKES CONTAINER CORPORATION,<br>ROBERT RICHEY, Vice President of Sales<br>of Riekes Container Corporation; and<br>ROBERT (I) RICHEY;<br><br>           Defendants. | **8:16CV95**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant Riekes Container Corporation's ("Riekes Container") motion to dismiss, Filing No. 88, pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In particular, defendant Riekes Container moves to dismiss claims Seven, Eight, Nine, Ten and Eleven of plaintiff's third amended complaint. Filing No. 85. Defendant Riekes Container has also filed a motion for partial summary judgment, Filing No. 97. Plaintiff filed this action alleging defendants violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Plaintiff contends that defendants are guilty of sex discrimination and retaliation under Title VII, and plaintiff further alleges a number of state law causes of action. Defendants contend that they did not ever have the requisite 15 employees to ever be covered by Title VII during the relevant time in question in this lawsuit and that they are not liable for the intentional actions of their employees.

**BACKGROUND**

For purposes of these motions, the Court shall accept as true, plaintiff's allegations as set forth in her Third Amended Complaint, unless otherwise stated. *See*

[Filing No. 85](#).  On or about February 1, 2014, plaintiff applied for and received an offer for the position of Regional Sales Manager at Riekes Corp.  She began working and defendant Robert Richey served as her supervisor. She moved to Austin, Texas for the position.  Plaintiff alleges defendant Richey had a drinking problem, received a DUI, and employees complained about his problem.  *See* Third Amended Complaint, [Filing No. 85](#), ¶ 15. He was allegedly reprimanded on several occasions at his previous job, and plaintiff believes such issues, particularly with alcohol, are in his personnel file.  Plaintiff was fearful of riding with him but did so when required.  During plaintiff's first training session out of town, plaintiff contends Richey drank heavily and then entered her hotel room and had sex with her.  He then asked for sex the next day.  When plaintiff refused he told her to go home and skip the remainder of the training. Richey allegedly continued to make sexual, inappropriate comments to plaintiff.  In July, 2014, plaintiff filed a report outlining the sexual harassment.  Defendant Atlas proceeded to conduct an independent investigation.  According to plaintiff, Richey then began harassing her for reports, and Reikes Container personnel then began questioning her travel expenses.  Following the investigation, Atlas informed plaintiff that she used these allegations as an "insurance card" for job security, and then they terminated her.

**STANDARD OF REVIEW**

*A.  12(b)(6)*

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." [Fed. R. Civ. P. 8(a)(2)](#).  The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *[Bell Atlantic Corp. v. Twombly](#)*[, 550 U.S. 544, 556](#) n.3. (2007) (quoting Fed. R. Civ. P.

8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'"  *Id*. at 556.  (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[O]n the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555-56.  In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

*Twombly* is based on the principles that (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 678-79.  Determining whether a complaint states a plausible claim for

relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id* at 679. Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679.

### B. 12(b)(1)

Jurisdiction is a threshold issue for this Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S.

332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

A complaint can be challenged under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.* In reviewing a pleading, the court may generally consider documents attached to it. *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372 (8th Cir. 2016) (regarding mortgage and notice); *Great Plains Trust Co. v. Union Pac. R.R.*, 492 F.3d 986, 990 (8th Cir. 2007) (stating the court may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### C.  Summary Judgment

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG*

5

*Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.,* 167 F.3d 398, 401 (8th Cir. 1999). "In ruling on a motion for summary judgment a court must not weigh

evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**DISCUSSION**

In response to plaintiff's filing of her Third Amended Complaint, defendant Riekes Container filed a Motion to Dismiss Plaintiff's Claims Seven through Eleven. Filing No. 88 at 1. Plaintiff's claims Seven through Eleven are for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent training, negligent supervision, and wrongful discharge in violation of public policy, respectively. Filing No. 85 at 17-21. Each of these claims arise from an instance in which plaintiff was allegedly sexually assaulted by her supervisor, Mr. Richey, as well as subsequent inappropriate behavior by Mr. Richey towards her, during her employment with defendant. Filing No. 85 at 2-13. Essentially, plaintiff is suing her employer regarding the inappropriate actions by another employee who was her supervisor.

Defendant asserts that it is not liable for the actions of Mr. Richey. Defendant contends that a principal is only liable for the torts of an agent if the tort was committed within the scope of the agent's employment. The assault of plaintiff by Mr. Richey, argues defendant Riekes Container, was clearly not within the scope of Mr. Richey's employment with defendant, and therefore defendant is not liable. Filing No. 89 at 4-9

Defendant also asserts that it is not liable for the assault based on another theory of liability from agency law. Principals can also be liable for torts committed by an agent if the agent was aided in committing the tort by the existence of the agency relationship. The defendant asserts that this "aided by agency" theory should not be adopted by the Court because the Court has not adopted the theory in prior cases and has predicted

that the Nebraska Supreme Court would likely not adopt the "aided by agency" theory were the issue to come before them. Filing No. 89 at 9. See *Pearce v. Werner Enterprises, Inc.*, 116 F.Supp.3d 948, 957 (D. Neb. 2015).

Defendant alternatively claims that, if the Court determines that the tort at issue occurred within the scope of plaintiff's employment and the doctrine of respondeat superior does apply, then the Nebraska Worker's Compensation Court has exclusive jurisdiction regarding this claim. Filing No. 89 at 10-12.

Plaintiff's response to defendant's claims is essentially that defendant is liable for Mr. Richey's actions because his inappropriate behavior towards plaintiff stemmed from his employment. Filing No. 107 at 5-9. The sexual assault and other unwanted interactions occurred on business trips, in work correspondence, and in other ways related to the plaintiff's employment with defendant. Because the tortious action by Mr. Richey was facilitated as part of his employment, plaintiff asserts that defendant is vicariously liable for these actions.

Further, plaintiff counters that this issue is not under the exclusive jurisdiction of the Nebraska Worker's Compensation Court because sexual assault is not the kind of injury that worker's compensation is intended to apply to. Typically, the kind of injury worker's compensation applies to is an "on-the-job" injury where someone is injured while performing a work task (such as having a box fall on them while stocking shelves).

### A. Worker's Compensation Claim

The Court is not persuaded by defendant's argument that the Nebraska Worker's Compensation Court would have exclusive jurisdiction in this case. Plaintiff's brief provided numerous cases in which state courts, in addressing worker's compensation

statutes similar to Nebraska's, held that assaults (sexual or otherwise) are not injuries that fall under worker's compensation statutes. Filing No. 107 at 15-22. Nebraska clearly requires that a person suffers the injury "in the course of their employment" and as a result of an accident. *See* Neb. Rev Stat. § 48-101 (injury must be a result of an "accident"); *Schlup v. Auburn Needleworks*, 479 N.W.2d 440 (Neb. 1992) (same). The Court believes the Nebraska Supreme Court would find as have the Court's addressing this issue that such a claim is not under the exclusive jurisdiction of the Worker's Compensation Court. Further, the District Court of Nebraska has addressed this issue and found it to be without merit. Further, in a case with similar facts, the federal district court determined that it had federal question jurisdiction over the case, regardless of the worker's compensation issue. *Pearce*, 116 F. Supp.3d at 953.

### *B. 15 Employees*

In their motion for partial summary judgment, defendant contends that they are not covered by Title VII, as they employ less than 15 persons at any given time. Plaintiff must prove that defendant had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current [2014] or preceding calendar year [2013] . . . ." 42 U.S.C. § 2000e(b). The Supreme Court has stated:

> For their part, petitioners emphasize that what is ultimately critical under their method is the existence of an employment relationship, not appearance on the payroll; an individual who appears on the payroll but is not an "employee" under traditional principles of agency law, *see, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-324, 112 S.Ct. 1344, 1348-1349, 117 L.Ed.2d 581 (1992), would not count toward the 15-employee minimum. We agree with petitioners that the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question.

*Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 211 (1997).

Claims One and Two of the Third Amended Complaint appear to rely on Title VII as the basis, and Claim Three is based on the same facts but arises under the Nebraska Fair Employment Practice Act ("NFEPA"), specifically citing Neb. Rev. Stat. § 48-1104(1). The NFEPA is patterned after Title VII. *See Cooper v. Penske Truck Leasing Co.*, 2015 WL 6870007 *1 n.2 (D. Neb. Nov. 9, 2015). Defendant offers affidavit evidence, and exhibits 1-14, showing that it never employed more than 13 employees in any week in 2013 or 2014. Filing No. 100, Attachments 3, 4 and 5, Feldman Affid. ¶¶ 3, 5-7, 9-25; Filing No. 100, Attach. 6, Carl Riekes Affid. ¶ 11. Defendant includes payroll checks and federal and state filings in support. Riekes Container also submits evidence showing that David Fitch, Calvary Pak, LLC and RK Packaging, LLC were independent contractors who received 1099's at the end of the year. (Feldman Affid; Carl Riekes Affid; Fitch Affid.). Filing No. 100, Attachments 1-10.

Plaintiff argues there are factual disputes as to the true number of employees defendant has listed. Filing No. 112. Plaintiff first contends that 14 employees worked at one time from March 1, 2014-September 1, 2014 for Rieckes Container. A fifteenth employee, Jeff Kress, was paid $15,000.00 per month for 18 months, argues plaintiff. Carl Riekes testified that this $15,000 per month was a loan to help Mr. Kress until he was able to work for Riekes, once his previous non-compete was up. Filing No. 112-1,Page ID #1418, Ex. 4, 21:14-22:19. It appears this loan continued from October 2013 for a period of 18 months. Plaintiff also suspects that Aaron Edelman was performing work off the payroll also. *See* Filing No. 112-1, Page ID # 1403, Ex. 1, ¶ 11. Plaintiff notes that defendant lists 15 employees who had a Riekespkg.com email address.

They are not identified as employees or independent contractors. *See* Filing No. 112-1,

Page ID # 1405, Ex. 2. Additionally, plaintiff's supervisor, Robert Richey, indicated in an

email to the plaintiff that Riekes Container has sales offices in New Jersey, Texas,

Oregon, Colorado and Illinois. Filing No. 112-1, Ex. 1, ¶ 4-6. Further, two employees,

Bernard Skluzacek and Brent Holdrige, who appear to be paid in quarters after their

employment ended, should be counted as employees, argues plaintiff. Plaintiff also

states that the "independent contractors" Robbins, Wahlin and Fitch earned

commissions of $80,668.00 in 2014.

> The Supreme Court has stated with regard to the 15 employee minimum:

> "If the Legislature clearly states that a threshold limitation on a
> statute's scope shall count as jurisdictional, then courts and litigants
> will be duly instructed and will not be left to wrestle with the issue.
> *See Da Silva*, 229 F.3d, at 361 ("Whether a disputed matter concerns
> jurisdiction on the merits (or occasionally both) is sometimes a close
> question."). But when Congress does not rank a statutory limitation
> on coverage as jurisdictional, courts should treat the restriction as
> nonjurisdictional in character. Applying that readily administrable
> bright line here yields the holding that Title VII's 15-employee threshold is
> an element of a plaintiffs claim for relief, not a jurisdictional issue."

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006). The Court agrees with the plaintiff.

It would be premature to rule on the number of employees in this lawsuit at this point.

Plaintiff is entitled to go to trial and present the rather conflicting evidence about who

was an employee and who was an independent contractor. The Court finds that "the

threshold number of employees for application of Title VII is an element of a plaintiff's

claim for relief, not a jurisdictional issue." *Arbaugh,* 546 U.S. at 516. If following

plaintiff's presentation of evidence in this regard, defendant still believes that the

element has not been proven, the defendant can make the appropriate motion at that time.

      *C.  Actions of Mr. Richey – liability of Riekes for tort claims under plaintiff's 7th, 8th, 9th, 10th, and 11th claims for relief*

Riekes Container argues that it cannot be held liable for Richey's alleged intentional tort of intentional infliction of emotional distress (7th Claim), negligent infliction of emotional distress (8th Claim), negligent training (9th Claim), negligent supervision (10th Claim), and wrongful discharge (11th Claim) in violation of public policy. Judge John Gerrard recently addressed similar issues. Judge Gerrard first analyzed the scope of employment issue, stating:

> In determining whether conduct falls within an employee's scope of employment, the Nebraska Supreme Court has used the Restatement (Second) of Agency (1958) for guidance. In *Johnson v. Evers*, 195 Neb. 426, 238 N.W.2d 474, 476 (1976), the court turned to Rest.2d Agency § 228, which provides, in part:
>     (1) Conduct of a servant is within the scope of employment if, but only if:
> > (a) it is of the kind he is employed to perform;
> > (b) it occurs substantially within the authorized time and space limits; [and]
> > (c) it is actuated, at least in part, by a purpose to serve the master ....
>         * * *

> Rest.2d Agency § 228;

> The third factor - Helvering's purpose in committing the alleged acts - is dispositive in this case. Generally speaking, courts have held that acts of sexual assault or harassment, such as Helvering's alleged attack on Pearce, do not fall within the scope of the tortfeasor' s employment.

*Pearce*, 116 F. Supp. 3d at 953. The Court further stated:

> Underlying these cases is the rationale that sexually-harassing behavior is

Undertaken specifically for the benefit of the employee and is necessarily unrelated to his employer's objectives. *Zuidema*, 866 F.Supp.2d at 937; *cf.* *Ballard v. Union Pac. R. Co.*, 279 Neb. 638, 781 N.W.2d 47, 53 & n. 17 (2010) (FELA case stating in dicta that there was no vicarious liability for sexually harassing conduct by employees who "were acting entirely upon their own impulses with no benefit to [their employer].")

*Id.* at 954.  Finally, the Court indicated:

As an alternative theory of vicarious liability, Pearce asserts that Werner may be liable for Helvering's conduct under an "aided-by-agency" theory, as set forth in Rest.2d Agency § 219(2)(d). That section provides:
        (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
        * * *
        (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

 Rest.2d Agency § 219(2)(d) (emphasis supplied).

*Id.*[1] Judge Gerard ultimately concluded that the motion to dismiss the intentional tort should be granted, but the negligence claims could proceed.  *Pearce*, 116 F. Supp.3d at 952.  The Court agrees with the analysis of Judge Gerard and for the reasons stated in *Pearce* adopts the same conclusion. The intentional tort claim will be dismissed.  The Court finds that with regard to the negligence claims, these are factual questions and

---

[1] Additionally, in *Pearce* the Court discussed how it believed the Nebraska Supreme Court would decide the issue:

    In this diversity case, the Court's task is to predict what the Supreme Court of Nebraska would make of § 219(2)(d). *See Ashley Cnty., Ark. v. Pfizer. Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Supreme Court of Nebraska has, in the past, sought guidance from and approved several other sections of the Restatement (Third) of Agency. *See*, *Elting v. Elting*, 288 Neb. 404, 849 N.W.2d 444 (2014); ... This Court predicts that the Supreme Court of Nebraska would do likewise in this case. Section 219(2)(d) has proven contentious and difficult to apply, and has been disavowed by its creators. Existing Nebraska case law does not, under these circumstances, support the adoption of a broad exception to the requirement that an employee's torts be within the scope of their employment before the employer will be held vicariously liable.  *Id.* at 957.

will proceed to trial. *See e.g.*, *A.W. v. Lancaster County School Dist.*, 784 N.W.2d 907 (D. Neb. 2010) (where plaintiff was assaulted in a restroom, and Nebraska Supreme Court found that question of foreseeability and the duty to take reasonable care was a factual, not a legal question). The plaintiff may pursue her state law claims, other than the one for intentional infliction of emotional distress.

Finally, the defendant's motion to dismiss the retaliation claim is without merit. Plaintiff complained about Richey's alleged abusive behavior. Within a short period of time thereafter, plaintiff was discharged. That is a factual issue and it will proceed to trial. *See Teetor v. Dawson Public Power Dist.*, 808 N.W.2d 86, 93 (D. Neb. 2010) (where the Court found cause of action for violation of a clear public policy exception to an at-will employment claim).

THEREFORE, IT IS ORDERED THAT:

1. Defendant Riekes Container Corporation's motion to dismiss, Filing No. 88, is granted as to the intentional tort (Claim 7), and that count is dismissed; the motion is denied with regard to the negligence claims, and for gender and the retaliation claims and those claims will proceed to trial; and

2. Defendant Riekes Container Corporation's motion for partial summary judgment, Filing No. 97, is denied.

Dated this 7th day of February, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge